## In re ESTATE OF Regis F. BURGER, M.D.

**Appeal of Janice B. Leckey.**

Superior Court of Pennsylvania.

Argued March 16, 2004.

Filed June 14, 2004.

Edward C. Leckey, Pittsburgh, for appellant.

Samuel H. Simon, Pittsburgh, for appellee.

Before: KLEIN, BENDER, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 Janice Burger Leckey appeals the order of the Orphan's Court sustaining preliminary objections of the Estate of Regis F. Burger, M.D., to her Citation to Show Cause why the decedent's Last Will and Testament should not be set aside. Leckey is not named as a beneficiary under the Will, but contests the residuary share of beneficiary Linda Nash, contending that Nash obtained an enhanced share of the Decedent's assets through exercise of undue influence. The Orphans' Court concluded that, regardless of whether Leckey could demonstrate undue influence as a matter of fact, she has no standing under controlling caselaw to bring her claim. We concur in the Orphans' Court's conclusion and thus affirm its order sustaining the Estate's preliminary objections.

¶ 2 Decedent Regis F. Burger died at the age of 99 on November 13, 2002, leaving an estate valued in excess of 2.5 million dollars. The decedent had no children and had been predeceased by his wife, a brother, James Burger, and a sister, Anzelma Burger Nash. Janice Burger Leckey is the decedent's niece, the only child of James Burger. Under a 1999 Will, the decedent named five beneficiaries to share in the residue of his estate, only a tiny fraction of which had been otherwise passed by specific devise. All of the bene-

ficiaries were heirs of Anzelma Burger Nash; the Will made no mention of Janice Burger Leckey or of her father, James Burger. Instead, the Will named Anzelma's granddaughter, Linda Nash, as the largest single beneficiary, leaving her fifty percent of the residuary estate.

¶ 3 Following the issuance of letters testamentary, Leckey filed the Citation to Show Cause, asserting that Linda Nash had exercised undue influence over the decedent during his waning years, and had thereby achieved a twenty-five percent increase in her residuary share as compared to prior versions of the Will. The Estate filed preliminary objections, which the Orphans' Court granted. The court concluded that regardless of the verity of Leckey's allegations, she lacked standing to pursue them because even if the devise to Linda Nash should fail, provisions of the Will itself, as well as Pennsylvania's anti-lapse statute, 20 Pa.C.S. § 2514, would preclude creation of an intestate interest. Because Leckey could benefit only from a partial intestacy that could not lawfully occur, the Orphans' Court concluded that she was deprived of legal standing to contest Nash's interest in the Estate. Trial Court Opinion, 4/29/03, at 5 (citing *In re Francis Edward McGillick Found.*, 537 Pa. 194, 642 A.2d 467, 469 (1994); *Estate of Briskman*, 808 A.2d 928, 931–32 (Pa.Super.2002)). Consequently, the court sustained the Estate's preliminary objections and, by order dated April 29, 2003, dismissed Leckey's action.

¶ 4 On June 3, 2003, Leckey filed the underlying appeal to this Court, in response to which, on June 6, the Orphan's Court ordered Leckey to file a Concise Statement of Matters Complained of on Appeal pursuant to Appellate Rule 1925(b). Although Leckey timely filed her Statement of record, she did not serve a copy on the trial judge. The Orphans' Court, the

Honorable Robert A. Kelly, noted Leckey's omission in his Opinion pursuant to Rule 1925(a), and suggested that precedent of both this Court and our Supreme Court compel waiver of her claims. Trial Court Opinion, 7/3/03, at 1–2 (quoting *Schaefer v. Aames Capital Corp.*, 805 A.2d 534, 535 (Pa.Super.2002)).

¶ 5 In the interim, on June 19, 2003, the Estate filed in this Court an Application to Quash. In a supporting brief, the Estate argued that Leckey's Notice of Appeal was untimely filed, thirty-five days after entry of the Orphans' Court's order. Leckey replied to the Estate's Application, asserting that her appeal was timely filed because the Orphans' Court's order, although dated April 29, 2003, was not filed of record until after May 27, 2003. In support of that allegation, Leckey attached a copy of the docket printed on May 27, which made no reference to the Orphans' Court's April 29 order. In rebuttal, the Estate filed a reply to Leckey's response, which supplemented its original motion. In the reply, the Estate asserted that notwithstanding the issue of timeliness, Leckey had violated Appellate Rule 1925(b), having failed to serve the court with a copy of her concise Statement of Matters Complained of on Appeal. The Estate argued accordingly that even if her appeal were timely, Leckey nonetheless had waived all issues on appeal.

¶ 6 While the Application to Quash remained pending, Leckey filed, on July 1, 2003, a Motion for Sanctions seeking an award of counsel fees, asserting that the Estate had raised spurious claims in seeking to quash her appeal. By order, *per curiam*, of August 5, 2003, we denied both the Application to Quash and the Motion for Sanctions without prejudice to the parties to raise those specific issues again upon submission of the case. Subsequently, however, on February 16, 2004, we

denied the Estate's Application to Quash on the merits, citing *Jara v. Rexworks,* 718 A.2d 788, 791 (Pa.Super.1998), and Civil Rule 236(a)(2), (b).

¶ 7 The parties have now completed the assigned briefing schedule. Leckey, in her Brief for Appellant, raises the following two questions for our review:

1. Does 20 Pa.C.S. § 2514(11) apply to a Bequest which was originally, before operation of 25[sic] Pa.C.S. § 2514(10), part of the Residuary under a Will?

2. Is the failure of a Residuary Bequest because of undue influence a contingency not dealt with in and undisposed of by the Will in this case?

Brief for Appellant at 3. In addition, Leckey reasserts her Motion for Sanctions by way of her Rule 2113 Reply Brief. In its Brief for Appellees, the Estate reasserts both of the stated grounds for its Application to Quash. We note, however, that our order of February 16, 2004 was not available to the parties during the time allowed for composition of the parties' briefs. Because we have since disposed of the Application to Quash on the merits, we shall confine our review to Leckey's questions presented and her Motion for Sanctions.

■ ¶ 8 In this case, the Orphans' Court concluded that the law applicable to Leckey's claims deprived her of standing to proceed, and sustained the Estate's preliminary objections in the nature of a demurrer. "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." *Mistick, Inc. v. Northwestern Nat. Cas. Co.,* 806 A.2d 39, 42 (Pa.Super.2002) (citations omitted). "Thus, our scope of review is plenary and our standard of review mirrors that of the trial court." *Homziak v. G.E. Capital*

*Warranty Corp.,* 839 A.2d 1076, 1079 (Pa.Super.2003). "Accepting all material averments as true, we must determine whether the complaint adequately states a claim for relief under any theory of law." *Id.* (citation omitted). "Where any doubt exists as to whether a demurrer should be sustained, it must be resolved in favor of overruling the demurrer." *Mistick,* 806 A.2d at 42 (citations omitted).

¶ 9 Leckey raises individual challenges to the two grounds stated by the Orphans' Court in support of its decision. Question 2 addresses the court's determination that, assuming the testator's devise to Linda Nash should fail, the disposition of her designated share is controlled by the terms of the Will itself, such that section 2514 of the Probate, Estates and Fiduciaries Code (PEF Code) is not implicated. Question 1 addresses the court's determination that section 2514, even if applied, prevents a lapse resulting in intestacy and deprives Leckey of standing to pursue her claim. Because the application of section 2514 need not be addressed if the disposition of a lapsed or void devise is otherwise controlled by the Will, we will first resolve Leckey's Question 2, namely, whether the provisions of the testator's Will would control the descent of the residual share designated for Linda Nash should her residuary interest be deemed invalid by reason of undue influence.

■ ¶ 10 Section 2514 prescribes that "[i]n the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules[.]" 20 Pa.C.S. § 2514. Among the rules specified are those controlling disposition of "[l]apsed and void devises and legacies," collectively recognized as Pennsylvania's "anti-lapse" statute. 20 Pa.C.S. § 2514(9), (10), (11). Because these provisions operate to effectuate the long standing policy of our law to

avoid intestacy, our Supreme Court has recognized that "the statute is rendered inoperative only when [the] testator specifically provided for disposition of lapsed bequests." *In re Estate of Corbett*, 430 Pa. 54, 241 A.2d 524, 527 (1968). Thus, although the testator's "contrary intent" that the statutory scheme should not apply must appear "with reasonable certainty," *Estate of Kehler*, 488 Pa. 165, 411 A.2d 748, 750 (1980), the testator need not include in his or her will an express provision to cure a potential lapsed or void devise. *See Estate of Corbett*, 241 A.2d at 527, n. 7.

■ ¶ 11 In this case, the trial court determined that the requisite "contrary intent" was demonstrated by the Will's paragraph "SEVENTH," which provides as follows:

SEVENTH: All the rest, residue and remainder of my estate, real and personal, and wheresoever situate, shall be divided and distributed as follows:

A. I give 50% of my residuary estate to LINDA NASH .... *If LINDA NASH does not survive me,* the assets which would have been distributed to her had she survived me shall be distributed proportionately to the other persons entitled to distribution pursuant to this Paragraph SEVENTH.

Last Will and Testament of Regis F. Burger, attached as Exhibit "B" to Petition for Citation to Show Cause Why Last Will and Testament Should Not Be Set Aside In Part, at 2 (italics added). In support of its conclusion, the court compared this section, which includes an alternative disposition in the event the beneficiary should predecease the testator, to the specific devises appearing in two other paragraphs of the Will. In Paragraphs FOURTH and FIFTH, the testator included bequests to named individuals but specified that if the

beneficiary did not survive, "this bequest shall lapse." Trial Court Opinion, 4/29/03, at 4. Based on these provisions, the court reasoned that the testator understood that a lapse could occur in other bequests should the named beneficiaries also predecease him, and had chosen to guard against that possibility in paragraph SEVENTH by specifying an alternative distribution. Trial Court Opinion, 4/29/03, at 4. The court concluded accordingly that "[b]ecause the Will makes provisions for the failure of residuary bequests, an intestate share would not be created" should Linda Nash's residuary interest be invalidated. Trial Court Opinion, 4/29/03, at 4.

¶ 12 Leckey argues that the alternative disposition in Paragraph SEVENTH is of limited significance, in part because the invalidation of Linda Nash's interest would not be a lapse, *i.e.*, the failure of a testamentary gift in consequence of the death of the devisee or legatee during the testator's lifetime. *See Berger's Estate*, 360 Pa. 366, 61 A.2d 855, 857 (1948). Leckey contends specifically that "the provisions of Decedent's Will make provision for a Residuary Bequest only in the event that a Residuary Beneficiary predeceases Decedent," and asserts further that because Linda Nash did not predecease the testator, the alternative disposition in Paragraph SEVENTH is immaterial. Brief for Appellant at 16. Leckey suggests further that because undue influence is not specified as the precise condition that might invalidate Nash's interest, the testator's recognition of other conditions that might invalidate the bequest provides no guidance. Brief for Appellant at 16 (quoting *In re Berger's Estate*, 61 A.2d at 857 (Pa. 1948) ("[W]here the testator ... failed to make provision for a contingency which actually happened, or to cover circumstances which subsequently resulted, a decree of intestacy [is] unavoidable.")).

¶ 13 We find Leckey's argument untenable, as she offers no analysis of how or why the specific reason that a bequest fails must control the manner in which the property at issue should pass to a secondary beneficiary. Further, she provides no discussion of why a testator's failure to anticipate the specific reason for the invalidation of a bequest should be read as a failure of the Will to demonstrate "contrary intent" precluding application of the antilapse provisions of section 2514. Her reliance on our Supreme Court's discussion in *Berger's Estate* does not ameliorate those deficiencies. We recognize that the Court in *Berger's Estate* defined "lapse" narrowly and refused to apply a testator's instructions for a "lapse" where the beneficiary did not predecease the testator. *See* 411 A.2d at 750. Nevertheless, we cannot find *Berger* dispositive of the matter at hand. Initially, we note that *Berger* did not purport to determine the applicability of the anti-lapse provisions of section 2514, nor could it, as the statute was promulgated in 1972, some 24 years after *Berger* was decided. Moreover, the question we address is not whether a lapse has occurred under any definition, but whether Regis Burger's Will provides sufficient indicia of "contrary intent" that section 2514 should not control the disposition of a potentially void bequest. When considered in this context, Leckey's argument is wide of the mark as it seeks to impose on the testator an obligation to provide a level of direction to avoid intestacy that our Supreme Court has declined to require. *Cf. Estate of Corbett*, 241 A.2d at 527, n. 7 ("We do not here intimate that only an express provision in the will covering a possible lapse will be sufficient to show testator's contrary intent.").

▪ ¶ 14 Whether a testator's bequest "lapses" because the beneficiary has predeceased him, or has failed for some other reason, the testator's expression of intent for the disposition of the affected property remains to be honored to the extent possible. Thus, if a bequest fails, (albeit under a scenario less common than the beneficiary's death) and an alternative disposition is specified, we cannot presume that had the bequest failed for a different reason the testators' intent for the descent of the property to someone else would change. Simply stated, there is no necessary connection between the reason for the failure of a bequest and the testator's determination of a secondary beneficiary. Where, as here, the Will makes clear that the testator was cognizant of the possibility that his bequests might not be effectuated as written and gave specific direction for the treatment of those bequests, we are compelled to conclude that his intent to dispose of the property via Will is at least "reasonably certain." *Estate of Kehler*, 411 A.2d at 750. Consequently, the provisions of the anti-lapse statute cannot be applied and the disposition of Nash's interest, if deemed void, is controlled by the Will. Intestacy does not result and Leckey is thereby deprived of any standing to raise her claim. *See Estate of Briskman*, 808 A.2d 928, 931–32 (Pa.Super.2002) (concluding that intestate heir not named as beneficiary under 1993 Will had no standing to challenge admission of Will into probate because even if Will failed she would not have "substantial, direct, and immediate" interest under prior Will so as to confer standing). The Orphans' Court did not err in so finding.

▪ ¶ 15 Because we conclude that the testator's expression of intent precludes application of PEF Code section 2514, we need not determine the effect of that section on Leckey's claims raised in Question 1. Accordingly, we shall proceed to Leckey's Motion for Sanctions. In that motion, Leckey asserts that she is entitled to an

award of counsel fees and expenses under 42 Pa.C.S. § 2503(7), (9), following the Estate's filing in this Court of its Application to Quash her appeal as untimely. Leckey argues that "Counsel for Linda Nash well knew when he filed the Motion to Quash Appeal in this Court that the Docket Entry upon which the Motion was based is false." Reply Brief for Appellant and Supplemental Reproduced Record (Reply Brief) at 16. Leckey contends further that, by virtue of information she provided to document the purported falsity of the docket entry, "Linda Nash and her Counsel knew that the Notice of Appeal filed on June 3, 2003 was timely filed, and that the Motion to Quash Appeal filed by them was without basis in fact. As such, its filing could only have been for the purpose of causing annoyance[.]" Reply Brief at 16.

■ ¶ 16 Upon review of the record, as well as the parties' extensive submissions surrounding the Motion for Sanctions, we do not find Leckey's asserted grounds sufficient for imposition of an award of counsel fees under 42 Pa.C.S. § 2503(7), (9). Section 2503 provides, in pertinent part, as follows:

**§ 2503. Right of participants to receive counsel fees**

The following participants shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter:

\* \* \* \* \* \*

(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter.

\* \* \* \* \* \*

(9) Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith.

42 Pa.C.S. § 2503(7), (9). Our Supreme Court has defined the level of conduct necessary under section 2503(9) as follows:

> An opponent's conduct has been deemed to be "arbitrary" within the meaning of the statute if such conduct is based on random or convenient selection or choice rather than on reason or nature. An opponent also can be deemed to have brought suit "vexatiously" if he filed the suit without sufficient grounds in either law or in fact and if the suit served the sole purpose of causing annoyance. Finally, an opponent can be charged with filing a lawsuit in "bad faith" if he filed the suit for purposes of fraud, dishonesty, or corruption.

*Thunberg v. Strause,* 545 Pa. 607, 682 A.2d 295, 299 (1996) (internal citations omitted). Section 2503(7) prohibits similar conduct, described as "dilatory, obdurate or vexatious." Generally speaking, "obdurate" conduct may be defined in this context as "stubbornly persistent in wrongdoing." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 815 (1987). Conduct is "dilatory" where the record demonstrates that counsel displayed a lack of diligence that delayed proceedings unnecessarily and caused additional legal work. *See Gertz v. Temple Univ.,* 443 Pa.Super. 177, 661 A.2d 13, 17 n. 2 (1995). Although disposition of claims under either section generally requires an evidentiary hearing, no hearing is necessary where the facts are undisputed. *See Kulp v. Hrivnak,* 765 A.2d 796, 800 (Pa.Super.2000).

¶ 17 In this matter, the parties do not dispute that the Estate filed its Application to Quash on the basis of docket entries that appeared of record as entered by the Allegheny County Register of Wills. Leckey concedes that those entries, taken at face value, suggest that her appeal was not timely filed. Reply Brief at 14–15 ("Appellant could not simply attach to the

Notice of Appeal the copy of the Docket Entries showing the Entry of the Order on the Docket because, if she did so, it would appear from the Notice of Appeal filed on June 3, 2003, that the Notice was filed more than thirty (30) days after entry of the Order."). Significantly, Leckey does not dispute the authenticity of the docket entries, but rather their accuracy. Although she demonstrated to the satisfaction of this Court that the entry corresponding to the file date of the order here was in fact erroneous, the entry nonetheless appeared on the official docket of the trial court. That docket remains the court's official record and all parties can presume to rely upon its accuracy. Because the Estate was entitled, as other litigants, to rely on the contents of the court's official docket, we cannot conclude that its Application to Quash Leckey's appeal as untimely constitutes actionable conduct under section 2503(7), (9).

¶ 18 For the foregoing reasons we affirm the Orphans' Court's order sustaining the Estate's preliminary objections and we deny Leckey's Motion for Sanctions under 42 Pa.C.S. § 2503.

¶ 19 Order AFFIRMED. Motion for Sanctions DENIED.